IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **SUZANNE LEFRERE, et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | **CIVIL ACTION NO. 07-0661-CG-M** |
| v. ) | |
| ) | |
| **BALDWIN COUNTY COMMISSION,** ) | |
| **et al.,** ) | |
| ) | |
| **Defendants.** ) | |

## ORDER

This case is before the court on defendant, Jorge Quezada's ("Quezada"), motion to alter, amend, or vacate (Doc. 61), defendants, James B. Johnson's ("Johnson") and Stephen Arthur's ("Arthur"), motion to alter, amend, or vacate (Doc. 63), and defendant, Baldwin County Commission's ("County Commission"), motion to alter, amend, or vacate (Doc. 64). For the reasons set forth below, the motions are **DENIED**.

**I.    QUEZADA'S MOTION**

This court entered an order on September 30, 2008, addressing several motions at once. (Doc. 59). One of the motions was Quezada's motion to dismiss, which the court denied. Among other things, Quezada argued that Article I, § 14 of the Alabama Constitution provides him with absolute immunity from state law claims asserted against him. Quezada's primary authority in support of this proposition of state law was an Eleventh Circuit opinion, Lancaster v. Monroe County, 116 F.3d 1419 (11thCir. 1997). Following "the decisions of the state's highest court," which this court is bound to do when determining the law of the Alabama, Flintkote Co. v. Dravo Corp., 678 F.2d 942, 945 (11th Cir. 1982), this court decided that the statement of Alabama law in Lancaster was either substantially undermined or completely invalidated by a

subsequent overhaul of the law of immunity in Alabama. (Doc. 59, pp. 8-13).

Quezada wants the court to reconsider that portion of its prior order, and moves it to do so under Rules 59 and 60 of the Federal Rules of Civil Procedure. No judgment has been entered in this case. See FED. R. CIV. P. 54 (defining "judgment"). The language of both rules technically indicates that they provide a basis for reviewing judgments rather than simply orders, but Quezada seeks to implicate them anyway.

Rule 59(e), entitled, "Motion to Alter or Amend a Judgment," says, "[a] motion to alter or amend a judgment must be filed no later than 10 days after the entry of the judgment." FED. R. CIV. P. 59(e).

As the Eleventh Circuit explains, "[t]he decision to alter or amend judgment is committed to the sound discretion of the district judge." Am. Home Assurance Co. v. Glenn Estess & Assocs., 763 F.2d 1237, 1238-39 (11th Cir. 1985). Although Rule 59(e) does not itself specify grounds for relief, this court previously summarized the proper standard of review under Rule 59(e) as follows:

> The decision of whether to grant or deny a Rule 59(e) motion is discretionary. A motion to alter or amend a judgment must demonstrate why the court should reconsider its prior decision and set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision. Generally, courts have recognized three grounds justifying reconsideration of an order: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or manifest injustice. Reconsideration of a previous order is an <u>extraordinary</u> remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.

Sonnier v. Computer Programs & Systems, Inc., 168 F. Supp. 2d 1322, 1336 (S.D. Ala. 2001) (internal quotations and citations omitted, emphasis in original).

Rule 60(b) allows courts to relieve a party from final judgment for six reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;

2

> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> (6) any other reason that justifies relief.

FED. R. CIV. P. 60(b).

The legal issue that Quezada wants this court to revisit is a question of state law. Eleventh Circuit precedent says, when interpreting state law, "federal courts must follow the decisions of the state's highest court, and in the absence of such decisions on an issue, must adhere to the decisions of the state's intermediate appellate courts unless there is some persuasive indication that the state's highest court would decide the issue otherwise." Flintkote, 678 F.2d at 945. This court should apply Alabama law as the court expects the Supreme Court of Alabama would apply it. Evanston Ins. Co. v. Stonewall Surplus Lines Ins. Co., 111 F.3d 852, 858 (11th Cir. 1997).

The Eleventh Circuit endeavored to predict how the Supreme Court of Alabama would treat a jailer's claim of immunity in 1997, when it decided Lancaster. There was no guidance from the Supreme Court of Alabama at that time. Lancaster, 116 F.3d at 1431 ("The Alabama Supreme Court has never addressed whether a suit brought against a jailer in his individual capacity alleging negligent performance of his statutory duties should be treated as a suit against the state."). The relevant holding in Lancaster is as follows:

> [G]iven our holding that jailers are entitled to Eleventh Amendment immunity for official capacity claims, we find no reasonable basis for distinguishing claims against the jailers from claims against the sheriff. In deciding whether an action against a state officer is, in fact, an action against the state, Alabama law instructs us to consider the nature of the action and the relief sought. See Phillips [v. Thomas], 555 So. 2d [81,] at 83 [Ala. 1989]. According to Parker v. Amerson, [519 So. 2d 442 (Ala. 1987),] if the "nature of the action" is a suit against a state official for the negligent performance of his statutory duties, that action is in reality a suit against the state. See 519 So. 2d at 446. It does not matter, either, that [the plaintiff] seeks only damages from the individual defendants. The same relief was sought from the deputy sheriff in Alexander [v. Hatfield, 652 So. 2d 1142 (Ala. 1994)]; nevertheless, the Alabama Supreme Court treated the suit as one against the state. See Alexander, 652 So. 2d at 1143-44.
>
> We believe the Alabama Supreme Court would accord the same treatment to [the plaintiff's] claims of negligence and wrongful death against the jailers that it has given claims against sheriffs and deputy sheriffs. Accordingly, we hold that those claims are barred by Alabama's absolute sovereign immunity.

Lancaster, 116 F.3d at 1431.

Alabama law on immunity underwent significant, fundamental changes beginning in 2000, when the Supreme Court of Alabama decided Ex parte Cranman, 792 So. 2d 392 (2000). See id. at 396 ("We today reexamine the doctrine of immunity of officers, agents, and employees of the State for torts committed in the course of their performance of their duties."). Under Cranman and its progeny, it is clear that most state employees are not entitled to Alabama's absolute sovereign immunity, now called State immunity, even if they are performing statutory duties. Rather, those employees are entitled to assert the defense of State-agent immunity. This court's order quoted the Ex parte Davis, 930 So. 2d 497 (Ala. 2005), opinion, which explained how Alabama courts determine whether an individual is entitled to "nearly impregnable" State immunity, or is entitled to the less expansive State-agent immunity.

> When determining whether a State interest in an action against a state official or employee in his or her individual capacity is sufficient to trigger the immunity granted by § 14, our cases distinguish between the standards applied to those state agents or employees whose positions exist by virtue of legislative pronouncement

4

>and those who serve as the constitutional officers of this State. We have held that
>State-agent immunity may bar an action against a state agent or employee under
>the principles announced in Ex parte Cranman, 792 So. 2d 392 (Ala. 2000).
>However, this court has consistently held that a claim for monetary damages
>made against a constitutional officer in the officer's individual capacity is barred
>by State immunity whenever the acts that are the basis of the alleged liability
>were performed within the course and scope of the officer's employment.

Id. at 500-01 (citations omitted).

The question becomes whether Quezada, a jailer, is a constitutional officer of the State of Alabama. Sheriffs are. Ex parte Haralson, 853 So. 2d 928, 932 (Ala. 2003). Deputies are, too, based on an "alter ego" theory. Id.; Davis, 930 So. 2d at 501. On the other hand, Eleventh Circuit precedent, including the Lancaster opinion on which Quezada relies, indicates that jailers are not sheriffs' "alter egos" because they have a more circumscribed role than do deputies. Lancaster, 116 F.3d at 1429 (Jailers do "not function as an 'extension of the sheriff to the same degree that deputies do, because a jailer cannot undertake every act that the sheriff could perform[.]"). See also Terry v. Cook, 866 F.2d 373, 377-78 (11th Cir. 1989) (although deputy sheriffs are the alter ego of the sheriff in Alabama, jailers have more limited and defined roles); Knight v. Vernon, 214 F.3d 544, 550 (4th Cir. 2000) (although a deputy sheriff is sheriff's alter ego, jailer's authority is more circumscribed) (citing Terry v. Cook, 866 F.2d at 378). Alabama courts have not found that fulfilling statutory duties at a jail entitles state employees to State immunity. See Doc. 59, p. 11 (discussing Wilson v. Manning, 880 So. 2d 1101 (Ala. 2003) and Alabama Dept. of Corrections v. Thompson, 855 So. 2d 1016 (Ala. 2003)). This court found no Alabama law that indicated jailers are constitutional officers of the state or that, when squarely faced with the question, that the Supreme Court of Alabama would treat them like constitutional officers of the state, as it treats deputy sheriffs.

Lancaster undertook to decide a question of Alabama law without the benefit of much

5

guidance from the Alabama courts.  Based on its belief about how the Supreme Court of Alabama would treat jailers for purposes of immunity, it gave the jailers in the case before it absolute sovereign immunity, which is now called State immunity.  Substantial, subsequent developments in Alabama law have completely invalidated, or at least substantially undermined, the legal underpinnings of the Lancaster decision.

None of the cases on which Quezada relies suggest that this court should change course. Litman v. Massachusetts Mut. Life Ins. Co., 825 F.2d 1506 (11th Cir. 1987), addressed whether a district court erred when it declined to follow a mandate from the court of appeals.  There is no mandate in this case, so Litman does not apply.  Tippitt v. Reliance Std. Life Ins. Co., 457 F.3d 1227 (11th Cir. 2006), is not particularly helpful, either.  It simply applies the rule that Eleventh Circuit panels are bound by the decisions of prior Eleventh Circuit panels - which is often referred to as the "prior panel rule."  Id. at 1234 ("[A] prior panel precedent cannot be circumvented or ignored on the basis of arguments not made to or considered by the prior panel.")  United States v. Gallo, 195 F.3d 1278 (11th Cir. 1999), held that prior Eleventh Circuit precedent on a question of federal law was no longer binding because it was, in fact, "substantially undermined or overruled" by a Supreme Court decision.  Id. at 1284.

The same is true for United States v. Archer, 531 F.3d 1347 (11th Cir. 2008).  In that case, the district court decided that carrying a concealed weapon was a "crime of violence" for purposes of applying the sentencing guidelines in a criminal case.  Id. at 1349.  The Eleventh Circuit affirmed because it was "bound by prior Eleventh Circuit precedent to hold that a conviction for carrying a concealed weapon in violation of Florida law constituted a crime of violence."  Id.  The Eleventh Circuit reconsidered its decision in light of an intervening Supreme Court decision.  The intervening decision did not specifically address whether carrying a

6

concealed weapon in violation of Florida law was a "crime of violence," but rather addressed a similar issue of "whether a conviction under New Mexico's felony driving under the influence statute (making the fourth conviction for drunk driving a felony) constitutes a 'violent felony[.]'" Id. at 1350. The Supreme Court held that the New Mexico law was not a violent felony, undercutting the rationale behind the Eleventh Circuit's decision that carrying a concealed weapon in violation of Florida law is a "crime of violence." Id. at 1350-51. The court decided that the Supreme Court's decision justified deviation from the "prior panel rule" because it "overruled or undermined to the point of abrogation" the prior panel decisions. Id. at 1352. This was the case even though the Supreme Court's decision did not specifically address the Florida law before the court, because it "set forth a new standard to evaluate" the issue before the Eleventh Circuit. Id. Because there is a new standard for evaluating whether a state employee is entitled to immunity in Alabama, the Archer case does not support Quezada's motion.

Quezada's motion is **DENIED**.

## II.    JOHNSON'S AND ARTHUR'S MOTION

As a preliminary matter, Johnson's and Arthur's motion, which takes pains to re-characterize the complaint at issue and this court's September 30, 2008, order, relies primarily on a reiteration of arguments that this court already rejected when it ruled on their motion to dismiss. That alone is sufficient to deny their motion. E.g. Sonnier, 168 F. Supp. 2d at 1336 (outlining three recognized grounds for relief under Rule 59(e). Still, the court briefly will address Johnson's and Arthur's arguments in turn. All of them are rejected, again. Johnson's and Arthur's motion to alter, amend, or vacate is **DENIED**.

### A.    The Heightened Pleading Argument

As this court recognized in its September 30, 2008, order:

> Under Eleventh Circuit precedent, a heightened pleading requirement attaches to § 1983 claims involving qualified immunity, such that a § 1983 plaintiff must "allege with some specificity the facts which make out its claim. Some factual detail in the pleadings is necessary to the adjudication of § 1983 claims." GJR Investments, Inc. v. County of Escambia, Fla., 132 F.3d 1359, 1367 (11th Cir. 1998) (internal citation omitted); see also Gonzalez v. Reno, 325 F.3d 1228, 1235 (11th Cir. 2003) (citing with approval authority from other jurisdictions holding that complaint must include specific, non-conclusory allegations of fact enabling district court to determine that those facts, if proved, will overcome defense of qualified immunity); Dukes v. Miami-Dade County, 232 Fed. Appx. 907, 910-11 (11th Cir. 2007) (applying the heightened pleading standard in a § 1983 case).

(Doc. 59, p. 15, footnote omitted).

Johnson's and Arthur's argument in this regard focuses on their position that "the Plaintiffs wholly failed to allege that Sheriff Johnson or Deputy Arthur had actual knowledge of the Decedent's medical condition." (Doc. 63, p. 3). To the contrary, the complaint alleges actual, subjective knowledge on their parts. Paragraph 46 contains the clearest allegations on those points.

> Sheriff Johnson and Chief Correction Officer Arthur had a subjective knowledge of a risk of serious harm to Mr. Yates if he did not receive the prescribed Librium and the 15 minutes close observation required by the medical department, yet they deliberately disregarded this risk by failing to ensure that he received the other two doses of Librium and by authorizing Officer Quezada to place Mr. Yates' [sic] on the D ring for over three hours without supervision. Johnson and Arthur knew that Officer Quezada would act unlawfully by failing to give Mr. Yates' [sic] his medication and in placing Mr. Yates' [sic] on the D-ring without maintaining his close observation status, yet they failed to stop Mr. Quezada from his course of conduct.

(Doc. 49, p. 11, ¶ 46).

The court relied on the foregoing language in its September 30, 2008, order. (Doc. 59, pp. 27-28). Johnson and Arthur recognize that these allegations are in the complaint but characterize them as "conclusions." (Doc. 63, pp. 3-6). The court has already ruled to the contrary and none of the cases that Johnson and Arthur cite, including GJR Investments,

8

Gonzalez, Dukes, Cottone v. Jenne, 326 F.3d 1352 (11th Cir. 2003), and Danley v. Allen, 540 F.3d 1298 (11th Cir. 2008), convince the court that it was wrong to decide that the complaint adequately alleged that Johnson and Arthur knew about Yates' medical condition and the risks associated with it.

### B. The Rule 12(b)(6), as Interpreted by Twombly, Argument

Johnson and Arthur also argue that the complaint fails to state a claim for purposes of FED. R. CIV. P. 12(b)(6). They rely heavily on a recent Supreme Court decision, Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955 (2007). Twombly outlined what it called "general standards" of pleading as follows:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]" While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.] Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]

Id. at 1964-65 (citations omitted, some alterations added, some in original).

The court also made a point of pointing out that the oft-quoted language from Conley v. Gibson, 355 U.S. 41 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," Id. at 45-46, was an "incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. Conley described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of

adequate pleading to govern a complaint's survival." Twombly, 127 S. Ct. at 1960 (citations omitted).

After comparing the complaint to the cause of action under the Sherman Act, the justices of the Supreme Court held "we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face. Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. at 1974. This court's September 30, 2008, order set out an accurate, fairly detailed statement of the standard for a 12(b)(6) motion to dismiss, which included citation to Twombly. (Doc. 59, pp. 1-4).

Johnson and Arthur cite numerous cases from around the country for the obvious proposition that Twombly, a United States Supreme Court case, is precedential authority on the 12(b)(6) standard. (Doc. 63, p. 7). They then assert, without citing any authority, that there are no allegations in the complaint that "set forth a plausible claim that rises above a speculative level," specifically arguing that the allegations contained in paragraph 46 of the operative complaint are legal conclusions that do not show that "these Defendants even knew of the Decedent's medical condition, much less that they knew of the treatment prescribed for that condition." (Doc. 63, p. 7). Paragraph 46 alleges that Johnson and Arthur knew that Yates needed to receive a specific medication and, if he did not receive the medication, there was a risk of serious harm. Contrary to Johnson's and Arthur's characterization of it, the allegation specifically indicates that Johnson and Arthur knew about Yates' medical condition and about the specific treatment that was prescribed for it.

### C.     The Qualified Immunity Arguments

The remainder of Johnson's and Arthur's motion take issue with the court's conclusion

10

that the complaint states a claim for supervisory liability under § 1983.  As the court explained in its September 30, 2008, order, supervisory liability can be established in more than one way.

> "[S]upervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability," <u>West v. Tillman</u>, 496 F.3d 1321, 1328 (11th Cir. 2007) (quotations omitted).  The Eleventh Circuit explained that supervisors are potentially vulnerable to § 1983 liability in the following situations:
>
>> We have held that supervisors can be held liable for subordinates' constitutional violations on the basis of supervisory liability under 42 U.S.C. § 1983.  <u>Cottone v. Jenne</u>, 326 F.3d 1352, 1360 (11th Cir. 2003).  Supervisory liability under § 1983 occurs "when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation."  <u>Id</u>. . . .
>>
>> A causal connection may be established when: 1) a "history of widespread abuse" puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he or she fails to do so; 2) a supervisor's custom or policy results in deliberate indifference to constitutional rights; or 3) facts support an inference that the supervisor directed subordinates to act unlawfully or knew that subordinates would act unlawfully and failed to stop them from doing so.  <u>Cottone v. Jenne</u>, 326 F.3d 1352, 1360 (11th Cir. 2003).
>
> <u>Mathews v. Crosby</u>, 480 F.3d 1265, 1270 (11th Cir. 2007).

(Doc. 59, p. 27).

The court then referenced parts of the complaint that alleged facts to establish supervisory liability under the foregoing standard.  (Doc. 59, pp. 27-28).  Johnson and Arthur make many of the same arguments that they raised in conjunction with their motion to dismiss.  They have not, however, directed the court to any authority or articulated any argument to convince the court to alter, amend, or vacate its prior order.

### III.    THE COUNTY COMMISSION'S MOTION

Much like Johnson's and Arthur's motion, the County Commission's motion mainly

recycles arguments that this court has already rejected, warranting denial for that reason alone. Still, the court will specifically address some of the arguments the County Commission advances and, with brief explanations, reject them again.  The County Commission's motion is **DENIED**.

      A.      **The Pleading Arguments**

The County Commission follows Johnson's and Arthur's lead by relying heavily on Twombly and asserting that the allegations in the operative complaint do not "support[] the conclusion that the County [Commission] failed to fund the Decedent's medical treatment, and, in fact, the allegations of the Amended Complaint demonstrate that the county funded his diagnosis and treatment by the medical staff."  (Doc. 64, p. 6).  The County Commission also argues that the plaintiffs pleaded themselves out of a case by making what the County Commission characterizes as inconsistent factual allegations.  (Doc. 64, pp. 3-6).  The court rejected this second argument in its September 30, 2008, order by pointing out that the Federal Rules of Civil Procedure allow alternative pleading.  (Doc. 59, pp. 3-4).

Neither argument is convincing.  First, the plaintiffs adequately state a claim under Rule 12(b)(6) and Twombly, as most clearly shown in paragraphs 33 and 64 of the second amended complaint.  The plaintiffs allege that the County Commission knew about overcrowded conditions that resulted from inadequate funding and caused guards to fail to dispense medication and fail to perform adequate prisoner observations.  (Doc. 49, pp. 7-8, ¶ 33).  They allege that the County Commission "failed to provide adequate funding to meet the medical needs of inmates, failed to provide funding to staff the jail adequately to attend to the medical needs of inmates and failed to appoint a jail physician or provide funding for the same."  (Doc. 49, p. 16, ¶ 64).

Second, the legal fallacy of the County Commission's argument on inconsistent pleading

aside, it is not necessarily inconsistent to allege that the county provided enough funding to employ a nurse and purchase medicine, but that it did not provide enough funding to staff adequately the jail with enough personnel to administer the medicine the nurse prescribed. The claim is that the funding was insufficient, not that there was no funding at all.

    **B.**    **The Remaining Arguments**

The remaining arguments that the County Commission advances, all of which the court has carefully considered, boil down to wholesale reiteration of arguments that this court has already considered and rejected and to new arguments, or new approaches to old arguments, that are unconvincing and untimely.

**IV.**    **CONCLUSION**

All three of the motions to alter, amend, or vacate are **DENIED**.

**DONE** and **ORDERED** this 25th day of November, 2008.

                      /s/ Callie V. S. Granade
                      CHIEF UNITED STATES DISTRICT JUDGE